IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARLEEN STANTON and
KELLY MORRELL,

      Plaintiffs,

vs.

BRUCE P. COUTURIER,

      Defendant,

and

THE EMPLOYEE OWNERSHIP HOLDING
COMPANY, a Delaware
Corporation,

      Nominal Defendant.

Case No. 2:09-cv-00519-RRB-GGH

**ORDER GRANTING TEOHC'S MOTION
FOR A PRELIMINARY INJUNCTION**

I.    **INTRODUCTION**

Before the Court is Defendant The Employee Ownership Holding
Company ("TEOHC") with a Motion for a Temporary Restraining Order
and Preliminary Injunction at Docket 37. The Court has already
granted a temporary restraining order pending the issuance of its
decision on the request for a preliminary injunction.[1] TEOHC seeks

---

[1]    Docket 46.

ORDER GRANTING MOTION FOR
  PRELIMINARY INJUNCTION - 1
2:09-CV-00519-RRB-GGH

to enjoin Defendant Bruce Couturier and TEOHC from participating in any arbitration relating to the enforcement of an indemnification agreement which Couturier signed while he was a corporate director of TEOHC. Plaintiffs Darleen Stanton and Kelly Morrell join the Motion at Docket 42.

Bruce Couturier opposes at Docket 48. He argues that any injunction prohibiting arbitration would violate the Anti-Injunction Act, 28 U.S.C. § 2283. He also argues that TEOHC and Plaintiffs have established neither a likelihood of success on the merits nor irreparable harm, and that the balance of hardships and the public interest weigh against issuance of the injunction.

## II. BACKGROUND

This case arises out of the same set of facts as the <u>Johnson v. Couturier</u> litigation, case no. 2:05-cv-02046. Clair Couturier, Bruce Couturier's brother, is the principal defendant in that litigation. In the <u>Johnson</u> case, Clair Couturier and other fiduciaries of the TEOHC Employee Stock Ownership Plan ("ESOP") are accused of breaching their fiduciary duties to TEOHC and the ESOP between 2004 and 2007 by leveraging the TEOHC assets to provide Couturier with a retirement package approximating between $35 to $50 million in value. The assets of TEOHC at the time the compensation packages were approved consisted of shares in what was

once known as Noll Manufacturing Company. The plaintiffs in the <u>Johnson</u> case have estimated Couturier's executive compensation to be approximately 70% of the equity of TEOHC.

This Court held in <u>Johnson</u> that "[t]he apparent level of Mr. Couturier's compensation [...] when compared with the overall value of Noll Manufacturing Company, would, if proven, be strong evidence by itself of either willful misconduct or at least lack of prudence by the individual defendants in their capacities as plan fiduciaries."[2] Therefore, the Court held that the <u>Johnson</u> plaintiffs had shown a likelihood of success on the merits of their case, and further held that the indemnification agreements between the defendants and TEOHC would likely violate Section 410 of ERISA, which invalidates instruments and agreements that exculpate plan fiduciaries from liability for their misconduct.[3] On the basis of these findings, the Court preliminarily enjoined the <u>Johnson</u> defendants from seeking to enforce any arbitration awards related to the indemnification agreements. The Ninth Circuit upheld the Court's decision in all aspects.[4]

---

[2]   <u>Johnson v. Couturier</u>, 2:05-cv-02046, Docket 398 at 6.

[3]   <u>Johnson</u>, Docket 398 at 7.

[4]   <u>Johnson v. Couturier</u>, 572 F.3d 1067, 1086 (9th Cir. 2009).

For procedural reasons, Bruce Couturier was not made a party to the <u>Johnson</u> litigation. Like several of the defendants in <u>Johnson</u>, Bruce Couturier served as a member of the Board of Directors of TEOHC. He was appointed in August 2005, and is alleged to have been an ESOP fiduciary with respect to appointing and removing ESOP Trustees (including his brother) and monitoring their activities.[5] He is alleged to have violated his ESOP fiduciary duties in August 2005 by executing the Indemnification Agreements and Mutual General Release in favor of Clair Couturier, David Johanson, and Robert Eddy, and by failing to object to the closing of his brother's buyout transaction.[6]

While Bruce Couturier was on the Board of Directors, he and TEOHC also signed an indemnification agreement, similar to those signed by the <u>Johnson</u> defendants. The agreement indemnifies Couturier for any legal liability he incurs for actions taken in his capacity as a director, except those actions which involve "deliberate wrongful acts or gross negligence."[7] The indemnification agreement also provides for the advancement of

---

[5]     Docket 1 at 13.

[6]     Docket 1 at 13.

[7]     Docket 1, Exhibit C at 11-14.

attorneys' fees during the course of any such litigation.[8] The arbitration between TEOHC and Bruce Couturier which had been scheduled for September 28, 2009 stemmed out of a dispute over TEOHC's obligations under this indemnification agreement.

## III. RULE OF DECISION

Federal Rule of Civil Procedure 65 authorizes injunctive relief under certain specified conditions. A plaintiff seeking a preliminary injunction must establish "'[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'"[9]

## IV.   DISCUSSION

There is some dispute between the parties as to what burden TEOHC carries in establishing the appropriateness of a preliminary injunction. TEOHC argues that it is "not required to make a showing that advancement and indemnification is barred by ERISA, but rather that under the circumstances present Couturier and TEOHC should be ordered to refrain from participating in an arbitration proceeding

---

[8]     Docket 1, Exhibit C at 12.

[9]     Johnson v. Couturier, 572 F.3d at 1078, quoting Winter v. Natural Res. Defense Council, Inc., --- U.S. ----, 129 S. Ct. 365, 374 (2008).

that would not bind ESOP participants."[10] While it is true that the results of the arbitration proceeding would not bind the ESOP participants, the arbitration *would* bind TEOHC unless it can be shown that the indemnification agreements are barred by ERISA. The Court has no reason to enjoin the arbitration except to preserve the ERISA rights of the ESOP participants. If TEOHC cannot establish that the indemnification agreements are likely barred by ERISA, then the fact that the arbitration is non-binding on the ESOP participants is irrelevant.

If Couturier were, for example, an independent caterer seeking to arbitrate a catering contract with TEOHC, rather than an ERISA fiduciary seeking indemnification under an allegedly prohibited contract, then the Court would have no jurisdiction to stay the arbitration. This would be true whether or not the ESOP participants were party to the arbitration agreement. While TEOHC need not necessarily show that Plaintiffs are likely to prevail in the litigation as a whole, the Court cannot enjoin the arbitration unless it finds that enforcement of the indemnification agreement would likely violate ERISA.

The Court will first examine whether TEOHC has carried the burden of showing that a preliminary injunction is justified. The

---

[10]     Docket 50 at 2.

Court will then address Couturier's objection that the Anti-Injunction Act prohibits any such injunction.

**A.    The Facts As Currently Presented Warrant a Preliminary Injunction**

As noted above, a plaintiff seeking a preliminary injunction must establish "'[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'"[11] The Court will address requirement in turn.

**1.    TEOHC and Plaintiffs Are Likely to Succeed in Showing that Indemnification Would Violate ERISA**

The Court has already found in the <u>Johnson</u> litigation that the plaintiffs are likely to able to show that Clair Couturier's compensation package was a prohibited transaction under ERISA, both because of its self-dealing nature and the likely injury it caused to the ESOP participants. The Ninth Circuit upheld this finding on appeal:

> Plaintiffs have established that they are likely to succeed in proving that Defendants breached their fiduciary duties under ERISA. [...] The district court correctly compared the size of Couturier's $34.8 million buyout package with the company's overall value, and properly noted its concern that this comparison by itself constitutes strong evidence that Defendants breached

---

[11]    <u>Johnson</u> at 1078.

their fiduciary duties under ERISA. Couturier's buyout package of $34.8 million equaled nearly 65 percent of the company's total assets as of June 2004 [.][12]

Having concluded that the compensation package likely violated ERISA, the Ninth Circuit further noted that "as directors with authority over the selection and retention of trustees, Defendants should have recognized that Couturier was hopelessly mired in a clear conflict of interest involving such blatant self-dealing and sought his removal as an ESOP trustee."[13] This obligation must apply to Bruce Couturier as well, since he was a corporate director at the time his brother's compensation package was finalized.

It is true, as Bruce Couturier points out, that the bulk of Clair Couturier's compensation had already been agreed upon prior to Bruce Couturier's appointment to the TEOHC Board. However, the compensation package was apparently still under review during Bruce Couturier's tenure as Director, which appears to have begun on or before August 8, 2005.[14] The Board's minutes from an August 8, 2005 meeting note that an "Executive Compensation Study with regard to

---

[12]     572 F.3d at 1079.

[13]     572 F. 3d at 1079.

[14]     Although Bruce Couturier claims not to have been appointed to the TEOHC Board until "[o]n or about August 22, 2005", the minutes of the August 8, 2005 TEOHC Board meeting list him as one of the "Directors Present" at the meeting. Docket 48, Exhibit D at 1.

Clair R. Couturier, Jr." was "considered and discussed" at the meeting.[15] Bruce Couturier was also present at the October 26, 2005 Board meeting at which the Board considered the transfer of certain real estate and consulting fees to Clair Couturier.[16] These facts support Plaintiffs' allegation that Bruce Couturier helped "approve the enormous payout to Clair Couturier."[17] More to the point, Bruce Couturier was aware of Clair Couturier's likely self-dealing (including that which occurred before Bruce Couturier was appointed to the Board), but took no steps to eliminate his brother's conflict of interest by removing him as an ESOP trustee at that time.

Bruce Couturier also argues that fulfilled his duty to monitor the plan trustees because voted to replace the plan trustees with the appointment of Consulting Fiduciaries, Inc.[18] But the record shows that the Board of Directors did not appoint Consulting Fiduciaries, Inc. as the plan trustee until October 26, 2005.[19] It is almost certainly not a coincidence that this appointment came

---

[15]    Docket 48, Exhibit D at 3.

[16]    Docket 48, Exhibit G at 5.

[17]    Docket 1, Complaint at 7.

[18]    Docket 48 at 12.

[19]    Docket 48, Exhibit G at 5.

only after the Johnson litigation was filed on October 11, 2005. The fact that the Board voted to remove Clair Couturier as trustee two weeks after the Johnson suit was filed is not much of a rebuttal to the allegation that he should have been removed much earlier. Although it is not a foregone conclusion, it is more likely than not that Bruce Couturier's failure to take any steps to remove Clair Couturier as an ESOP trustee prior to October 26, 2005 was a breach of his fiduciary duty to monitor plan trustees.

If in fact Bruce Couturier breached his duty to monitor under ERISA, then the indemnification agreement he received from TEOHC would be unenforceable. In Johnson, the Ninth Circuit upheld this Court's conclusion that "[b]ecause Plaintiffs are likely to succeed in proving that Defendants breached their ERISA duties, they are also likely to succeed in proving that Defendants are not entitled to indemnification, nor to advancement of defense costs, because section 410(a) of ERISA renders the governing agreements void."[20] That is because any agreement "which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under [ERISA] shall be void as against public policy."[21] Therefore, in this case as in Johnson, it is likely that

---

[20]    572 F. 3d at 1079.

[21]    29 U.S.C. § 1110(a).

the indemnification agreement at issue is void under ERISA
§ 410(a).

### 2.  Plaintiffs are Likely to Suffer Irreparable Harm

The irreparable harm which is likely to occur is the depletion
of plan assets due to the advancement of attorneys' fees to Bruce
Couturier. This harm is greater than merely the depletion of plan
assets due to the costs of arbitration, although the Court
considers the arbitration costs as well in its analysis. The risk
of depletion of assets due to attorney fees alone is considerable;
the Court need not ignore the prodigious legal bills which are
piling up on all sides of this litigation.

Moreover, Bruce Couturier is unlikely to be able to repay any
advancement of attorneys' fees. Clair Couturier testified at a May,
2009 arbitration that he does not expect to be repaid the $200,000
which he has lent to his brother in order to help with his legal
defense.[22] He also mentioned that Bruce Couturier is currently
unemployed.[23] This evidence suggests that any attorney fees advanced
to Mr. Couturier are unlikely to be repaid, which is sufficient to
establish irreparable harm to TEOHC and Plaintiffs.[24]

---

[22]    Docket 49, Exhibit 5 at 4.

[23]    Docket 49, Exhibit 5 at 4.

[24]    See <u>Johnson</u> at 1081.

**3.    The Balance of Equities Tips in Favor of Plaintiffs and TEOHC**

As it was in the <u>Johnson</u> case, the Court is cognizant of the difficulties that Mr. Couturier might face if there is no advancement of attorney fees. As the Ninth Circuit held in <u>Johnson</u> with regard to the defendants in that case, they "will be forced either: (1) to find a way to pay for their own defense and seek recovery after trial; (2) to find attorneys willing to accept the risk of payment after trial; (3) to continue litigation without representation; or (4) to settle."[25] While the Ninth Circuit noted that "these options are accompanied by real and difficult consequences for each Defendant", it nonetheless held that any such consequences are outweighed by the potential hardship to Plaintiffs if advanced defense costs are not reimbursed."[26]

The Ninth Circuit also noted that the hardship to the defendants was lessened by the fact that the plaintiffs were willing to place the potential defense costs in escrow.[27] The Court believes that this would be a reasonable measure, and will condition the issuance of any preliminary injunction on the

---

[25]    <u>Johnson</u> at 1081.

[26]    <u>Johnson</u> at 1081-82.

[27]    <u>Johnson</u> at 1082.

establishment of an escrow account or similar protection of Bruce
Couturier's potential defense costs.

### 4.   Public Policy Favors the Injunction

ERISA § 410 explicitly states that "any provision in an
agreement or instrument which purports to relieve a fiduciary from
responsibility or liability for any responsibility, obligation, or
duty under this part shall be void *as against public policy*."[28] A
preliminary injunction against arbitration and advancement of legal
fees would promote this public policy.

Bruce Couturier contends that "sound judicial administration
warrants arbitrating the indemnification issue now, and if
necessary, at a later date litigating whether the resulting award
may be enforced."[29] The Court disagrees. Even if Bruce Couturier
prevails at the arbitration, that would simply bring us to the same
question of whether the indemnification agreements are likely
invalid under ERISA. If the arbitration goes forward and Couturier
wins, only to have this Court enjoin the enforcement of the award,
then nothing will have been accomplished except the depletion of
both parties' resources. The same would be true if Couturier were
to lose at arbitration. Sound judicial administration requires this

---

[28]    29 U.S.C. § 1110(a) (emphasis added).

[29]    Docket 48 at 17.

Court to enjoin the arbitration of what is likely to be an invalid indemnification agreement, to prevent the unnecessary depletion of the ESOP participants' assets.

**B.    28 U.S.C. § 2283 Does Not Prohibit An Injunction Against Arbitration of the Indemnification Agreement**

Under the Anti-Injunction Act, 28 U.S.C. § 2283, a federal court may enjoin a state court proceeding only where "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Court finds that the second exception applies here. A federal court may enjoin a state court proceeding "in aid of its jurisdiction" if and only if the state action "threatens to render the exercise of the federal court's jurisdiction nugatory."[30]

Given that Plaintiffs can likely show in this federal proceeding that enforcement of the indemnification agreements would violate ERISA § 410(a), any state court ruling which permits indemnification would "render the exercise of the federal court's jurisdiction nugatory."[31] It is therefore proper for this Court to enjoin any such proceedings in aid of its jurisdiction over

---

[30]    <u>Sandpiper Village Condominium Ass'n., Inc. v. Louisiana-Pacific Corp.</u>, 428 F.3d 831, 843-44 (9th Cir. 2005) (citations omitted).

[31]    <u>Sandpiper Village Condominium Ass'n.</u> at 843-44.

Plaintiffs' ERISA claims. The Anti-Injunction Act does not bar the injunction requested by TEOHC.

## V.   CONCLUSION

TEOHC and Plaintiffs have shown that it is more likely than not that the indemnification agreement between TEOHC and Bruce Couturier would violate ERISA 410(a). Plaintiffs and TEOHC have shown irreparable harm to be likely, and the balance of hardships and public policy favor issuance of the injunction. Such an injunction would be in aid of this Court's jurisdiction over Plaintiffs' ERISA claims, and would therefore comply with the Anti-Injunction Act, 28 U.S.C. § 2283. For the foregoing reasons, TEOHC's Motion at Docket 37 for a preliminary injunction staying and enjoining the arbitration of the indemnification agreement is GRANTED. In accordance with this order, TEOHC is hereby ordered to hold Bruce Couturier's potential attorney fees in escrow, or to show cause why it cannot or should not be required to do so.

**IT IS SO ORDERED.**

ENTERED this 9th day of October, 2009.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE